# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: _JUSTICE SHIRLEY WERNER KORNREICH_   PART 54
                                    Justice

Index Number : 652296/2015
GE OIL & GAS, INC
vs.
TURBINE GENERATION
SEQUENCE NUMBER : 002
_Summary Judgment_

INDEX NO. _____
MOTION DATE 12/10/15
MOTION SEQ. NO. _____

The following papers, numbered 1 to _____, were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). 40-50
Answering Affidavits — Exhibits _____ | No(s). 51-56
Replying Affidavits _____ | No(s). 84-91, 96-97

Upon the foregoing papers, it is ordered that this motion is

MOTION IS DECIDED IN ACCORDANCE
WITH ACCOMPANYING MEMORANDUM
DECISION AND ORDER.

Dated: 3/4/16                                                     _[signature]_, J.S.C.
                                                         SHIRLEY WERNER KORNREICH
                                                                           J.S.C.

1. CHECK ONE: ............................................... ☐ CASE DISPOSED  ☒ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☐ GRANTED  ☐ DENIED  ☒ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: ................................................ ☐ SETTLE ORDER  ☐ SUBMIT ORDER
                                                                     ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
------------------------------------------------------------------X
GE OIL & GAS, INC.,                                                   Index No.: 652296/2015

                      Plaintiff,                          **DECISION & ORDER**

      -against-

TURBINE GENERATION SERVICES, L.L.C., and
MICHAEL B. MORENO,

                      Defendants.
------------------------------------------------------------------X
TURBINE GENERATION SERVICES, L.L.C., and
MICHAEL B. MORENO

                      Third-Party Plaintiffs,

      -against-

GENERAL ELECTRIC COMPANY,

                      Third-Party Defendants.
------------------------------------------------------------------X
SHIRLEY WERNER KORNREICH, J.:

      Plaintiff GE Oil & Gas, Inc. (GEOG) moves, pursuant to CPLR 3212, for partial summary judgment against defendants Turbine Generation Services, L.L.C. (TGS) and Michael B. Moreno. Plaintiff's motion is granted in part and denied in part for the reasons that follow.[1]

    I.    *Factual Background*

      Unless otherwise indicated, the following facts are undisputed.[2]

---

[1] After oral argument on the instant motion [*see* Dkt. 104 (12/8/15 Tr.)], on January 6, 2015, defendants filed an answer with counterclaims [*see* Dkt. 111] and a third-party complaint [*see* Dkt. 115], reflected by the caption above. The court will not address defendants' claims since they are not yet properly before the court. It also should be noted that, at oral argument, the court denied defendants' motion to stay or dismiss this action in favor of the Louisiana state court action and reserved on the instant summary judgment motion. *See* Dkt. 109. The reasons for denial of defendants' motion are explained on the record and are not repeated here.

[2] *See* Dkt. 97 (joint statement of undisputed facts).

The plaintiff in this action, GEOG, is a subsidiary of third-party defendant General Electric Company (GE). GEOG is a Delaware corporation with a principal place of business in Houston, Texas. It describes itself as one of the world's leading equipment and services providers in the oil and gas industry and provides financing for its products and services. This case concerns defaults on a note and personal guaranty related to an alleged joint venture (really, as discussed below, an agreement to agree memorialized in a term sheet) with defendant Moreno and his Louisiana LLC, TGS.[3] Moreno apparently formed TGS to design, assemble, and service turbine or gas engine power units for use in oil field production. GEOG claims Moreno and TGS sought financing from GEOG to launch a new business venture related to oil drilling and fracking.

Moreno, however, contends that the financing was part of a proposed oral joint venture agreement with GE, GEOG, TGS, and non-party Green Field Energy Services, Inc., which Moreno first proposed in September 2012. Moreno claims GE and GEOG orally promised to commit $200 million to fund the alleged joint venture, half of which was to be divided between fracking and power generation lines of business. He further claims that GE and GEOG later decided they only wanted to pursue and fund the power generation business. According to Moreno, GE and GEOG "remained committed" to investing $100 million in the power generation business. Moreno contends that on May 7, 2013, he decided to forgo the fracking business and formed TGS to advance the parties' power generation business venture. GE and GEOG allegedly told Moreno that a safety engineering study had to be completed before it

---

[3] TGS is the sole member of another of Moreno's companies, a non-party Delaware LLC called MOR DOH Holdings, L.L.C. (MOR). According to the signature line on the Note discussed herein, Moreno is the CEO of both TGS and MOR. *See* Dkt. 2 at 14. Schedule 3(l) of the Note states that MOR's members are two annuity trusts that each have a 50% membership interest. *See id.* at 20.

2

would fully fund the power generation business. GE and GEOG offered to provide TGS with $25 million of short term financing which would be issued in the form of a convertible bond.

Notwithstanding the narrative proffered by Moreno, the parties, in fact, actually memorialized their agreement in comprehensive written agreements entered into with the aid of sophisticated counsel. First, TGS executed a $25 million Senior Secured Promissory Note dated May 13, 2013 (the Note). *See* Dkt. 2. The Note was secured by TGS's assets and perfected by the filing of a UCC-1 Financing Statement. *See* Dkt. 7. The Note – which carries 12% interest per annum and 20% upon default – had an original maturity date of September 13, 2013. *See* Dkt. 2 at 2-3. Pursuant to three amendments, the maturity date was extended to December 29, 2013. *See* Dkt. 3-5. The Note is governed by New York law and provides for jurisdiction in this court. *See* Dkt. 2 at 7-8.

Additionally, Moreno signed a Guaranty Agreement also dated May 13, 2013, in which he personally and unconditionally guaranteed the Note (the Guaranty). *See* Dkt. 8. In the Guaranty, Moreno waived all affirmative defense, set-offs, and counterclaims including, *inter alia*, all claims against GEOG related to the validity and enforceability of the Note and the Guaranty. *See id.* at 5-6. The Guaranty too is governed by New York law and provides for jurisdiction in this court. *See id.* at 8. Neither the Note nor the Guaranty contain merger or integration clauses, but the Guaranty states that the parties do not have any fiduciary duties to each other and that their relation is "solely that of debtor and creditor." *See id.* at 7.

Also annexed to the Note is an 11-page document dated May 13, 2013, titled "Project Cayenne Summary of Principal Terms" (the Term Sheet). *See* Dkt. 2 at 29-39. The Term Sheet begins by stating:

3

> This summary of principal terms does not constitute a contractual commitment of any party but merely represents the proposed terms of a transaction. Any commitments will be subject to, among other things, completion of due diligence, acceptable definitive documentation, with among other things, acceptable representations, warranties, covenants and events of default, and requisite General Electric Company ("GE") internal approvals.

*See id.* at 29. The Term Sheet, thus, makes clear that the parties did not have a binding joint venture agreement but merely an agreement to agree. The proposed terms include, *inter alia*, that: (1) the preferred membership interests of TGS would be owned by a GE subsidiary and the common equity interests would be owned by MOR, controlled by Moreno; (2) GE would fund TGS with contributions of up to $100 million, the first $50 million of which would occur on June 15, 2013 (defined in the Term Sheet as the "First Contribution"); and (3) "[p]rior to the First Contribution ... Moreno and GE will finalize and agree on a three-year business plan and a three-year financial forecast for TGS." *See id.* at 29-31.

The Term Sheet describes TGS's "Line of Business" as follows:

> TGS's principal line of business will be to design, assemble, lease and service turbine or gas-engine powergen units ("ITUs") for deployment in the oil and gas exploration industry. The TPUs will initially be assembled for TGS by Turbine Powered Technology, LLC ("TPT"), a joint venture of Green Field Energy Services, Inc. ("GFES") and Marine Turbine Technologies, L.L.C. ("MTT"), and, ultimately, by TGS itself and other parties. The TPU engines will initially be used Honeywell International Inc. ("Honeywell") engines obtained from Honeywell and other third parties and, in the future, will include GE engines and discontinued Honeywell engines that TPT will be licensed to manufacture. The TPUs will be leased or sold by TGS directly to customers such as SandRidge Exploration and Production, LLC and Patriot Power Solutions.

*See id.* at 29.

TGS used the $25 million loan from GEOG to purchase turbines and other equipment. However, the project contemplated by the Term Sheet never came to fruition. It is undisputed that the First Contribution never occurred and that TGS did not repay the Note upon the extended

4

maturity dated of December 29, 2013. The parties disagree as to why the deal fell apart. Moreno claims GE and GEOG had "buyers' remorse" and declined to make the First Contribution and alleges that GEOG reneged on an oral promise not to ever call the Note.

Questions of fact exist as to why the parties' agreement to agree did not result in the transactions contemplated by the Term Sheet. As discussed below, agreements to agree give rise to a duty to negotiate in good faith. *See IDT Corp. v Tyco Group, S.A.R.L.*, 23 NY3d 497, 502-03 (2014) ("parties may enter into a binding contract under which the obligations of the parties are conditioned on the negotiation of future agreements. In such a case, the parties are obliged to negotiate in good faith."). Moreno claims GEOG breached that good faith obligation. GEOG denies this. Regardless, adjudication of the alleged good faith breach is not at issue on the instant motion because GEOG only seeks partial summary judgment on the Note and the Guaranty. While it is clear that GEOG is entitled to summary judgment on liability on the Note and the Guaranty, as discussed further below, given the inherent interconnectedness of the claims arising from the Note, the Guaranty, and the Term Sheet, severance is highly inappropriate in this case. Therefore, a final determination of damages and the entry of judgment must wait until complete adjudication of all claims in this action.[4]

II.  *Procedural History*

On April 7, 2014, GEOG commenced an action in the United States District Court for the Western District of Louisiana against TGS and Moreno to enforce and collect on the Note and

---

[4] In the ordering language below, the court *sua sponte* grants defendants leave to amend their claims and counterclaims to assert more precise allegations to sustain a claim for breach of the Term Sheet, which is an agreement to agree and does not give rise to a joint venture. The court expresses no opinion at this time on the amount of set-off defendants may be entitled to under the Note and the Guaranty by virtue of potential liability for allegedly breaching the Term Sheet, nor will the court opine on the viability of defendants' other claims.

5

the Guaranty and to foreclose on the collateral (the Louisiana Federal Action). *See* Dkt. 18. TGS and Moreno filed an answer in that action and also filed counterclaims and third-party claims virtually identical to those asserted in the instant action. *See* Dkt. 23 & 24. In a thorough and well-reasoned decision dated February 11, 2015,[5] the federal court (Doherty, J.) resolved the parties' dispositive motions by holding, *inter alia*, that the Term Sheet was an agreement to negotiate in good faith, that the parties did not have fiduciary duties to each other, and otherwise denied summary judgment and judgment on the pleadings on the parties' myriad other claims. *See* Dkt. 25.

Unfortunately, the parties' claims were not resolved in the Louisiana Federal Action. The Louisiana Federal Action was predicated on diversity jurisdiction, which, after deciding the parties' dispositive motions, the federal court decided was lacking. In a Report and Recommendation dated July 15, 2015, the Magistrate Judge recommended that the Louisiana Federal Action be dismissed. *See* Dkt. 26. The parties did not object to the Magistrate Judge's report and, therefore, on August 18, 2015, Judge Doherty entered a judgment dismissing the Louisiana Federal Action without prejudice, for lack of jurisdiction. *See* Dkt. 74.

In the interim, the parties each filed new lawsuits in state courts. Defendants filed an action in a Louisiana state court on May 29, 2015 (before the filing of the jurisdictional motion

---

[5] Judge Doherty correctly held that New York law applies, but erred by analyzing the Term Sheet under the federal Type I/Type II framework expressly rejected by the New York Court of Appeals. *IDT Corp. v Tyco Group, S.A.R.L.*, 13 NY3d 213 n.3; *see Amcan Holdings, Inc. v Canadian Imperial Bank of Commerce*, 70 AD3d 423, 427 (1st Dept 2010) (the "Court of Appeals recently rejected the Federal Type I/Type II classifications as too rigid, holding that in determining whether the document in a given case is an enforceable contract or an agreement to agree, the question should be asked in terms of 'whether the agreement contemplated the negotiation of later agreements and if the consummation of those agreements was a precondition to a party's performance."), quoting *IDT, supra*; *see also Offit v Herman*, 132 AD3d 409, 409-10 (1st Dept 2015) (same, rejecting argument that MOU was Type II agreement and instead finding it to be an agreement to agree). That said, under the proper standard for analyzing agreements to agree, set forth below, this court comes to similar conclusions.

6

in federal court), but did not serve plaintiffs or notify them of the existence of the lawsuit until July 13, 2015. Prior to being served, GEOG filed (on June 26, 2015) and served (on June 30, 2015) the instant action in this court. As previously noted, the court denied defendants' motion to dismiss this action in favor of the action in Louisiana state court.

GEOG's complaint in this action contains five causes of action: (1) breach of the Note, asserted against TGS; (2) breach of the Guaranty, asserted against Moreno; (3) injunctive relief related to the collateral, asserted against both defendants; (4) declaratory relief related to the collateral, asserted against both defendants; and (5) replevin, asserted against both defendants. On August 13, 2015, GEOG filed the instant motion for partial summary judgment on the first and second causes of action for breach of the Note and the Guaranty.

*III. Discussion*

Summary judgment may be granted only when it is clear that no triable issue of fact exists. *Alvarez v Prospect Hosp.*, 68 NY2d 320, 325 (1986). The burden is upon the moving party to make a *prima facie* showing of entitlement to summary judgment as a matter of law. *Zuckerman v City of New York*, 49 NY2d 557, 562 (1980); *Friends of Animals, Inc. v Associated Fur Mfrs., Inc.*, 46 NY2d 1065, 1067 (1979). A failure to make such a *prima facie* showing requires a denial of the motion, regardless of the sufficiency of the opposing papers. *Ayotte v Gervasio*, 81 NY2d 1062, 1063 (1993). If a *prima facie* showing has been made, the burden shifts to the opposing party to produce evidence sufficient to establish the existence of material issues of fact. *Alvarez*, 68 NY2d at 324; *Zuckerman*, 49 NY2d at 562. The papers submitted in support of and in opposition to a summary judgment motion are examined in the light most favorable to the party opposing the motion. *Martin v Briggs*, 235 AD2d 192, 196 (1st Dept

7

1997). Mere conclusions, unsubstantiated allegations, or expressions of hope are insufficient to defeat a summary judgment motion. *Zuckerman,* 49 NY2d at 562. Upon the completion of the court's examination of all the documents submitted in connection with a summary judgment motion, the motion must be denied if there is any doubt as to the existence of a triable issue of fact. *Rotuba Extruders, Inc. v Ceppos*, 46 NY2d 223, 231 (1978).

GEOG is entitled to summary judgment on the Note and the Guaranty. It is undisputed that TGS did not repay the Note at maturity and that Moreno unconditionally guaranteed payment. Any possible defense by Moreno was waived in the Guaranty.

That said, as discussed, the Note and the Guaranty are but two of the parties' three agreements governing their relationship. The third, the Term Sheet, clearly is not a definitive, binding agreement obligating GEOG to provide further financing to TGS. The Term Sheet makes this perfectly clear. *See* Dkt. 2 at 29 ("This summary of principal terms does not constitute a contractual commitment of any party but merely represents the proposed terms of a transaction"). Rather, the Term Sheet leaves myriad terms open for future negotiations and is a classic agreement to agree. *See Joseph Martin, Jr., Delicatessen, Inc. v Schumacher*, 52 NY2d 105, 109 (1981) ("a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable."); *see generally Cobble Hill Nursing Home, Inc. v Henry & Warren Corp.*, 74 NY2d 475, 482 (1989); *see also Kolchins v Evolution Markets, Inc.*, 128 AD3d 47, 61 (1st Dept 2015) ("The law is clear that although the parties may intend to enter into a contract, if essential terms are omitted from their agreement, or if some of the terms included are too indefinite, no legally enforceable contract will result").

8

Agreements to agree obligate the parties to negotiate in good faith. *IDT*, 23 NY3d at 502-03. However, the obligation to negotiate in good faith "can come to an end without a breach by either party" because "not every good faith negotiation bears fruit." *Id.* at 503. A party that fails to negotiate in good faith may be liable to the non-breaching party, but the only damages recoverable are the party's out-of-pocket expenses. *180 Water St. Assocs., L.P. v Lehman Bros. Holdings, Inc.*, 7 AD3d 316, 317 (1st Dept 2004), citing *Goodstein Const. Corp. v City of New York*, 80 NY2d 366 (1992); see *MG West 100 LLC v St. Michael's Protestant Episcopal Church*, 127 AD3d 624, 626 (1st Dept 2015) ("Any profits that plaintiffs may have made under the prospective contracts contemplated by the MOU cannot properly be awarded as damages ... since the MOU was merely a preliminary agreement by which the parties planned to proceed with their initial efforts on the construction project") (citation omitted).

To the extent defendants argue that the parties had binding obligations under an alleged joint venture agreement, such an argument is incompatible with the express terms of the Term Sheet – which papered the subject of the alleged oral agreement. For there to be a joint venture, the parties must manifest their intent to be joint venturers by, *inter alia*, agreeing to share profits and losses. See *Art & Fashion Group Corp. v Cyclops Production, Inc.*, 120 AD3d 436, 438 (1st Dept 2014), citing *Richbell Info. Servs., Inc. v Jupiter Partners, L.P.*, 309 AD2d 288, 298 (1st Dept 2003) (there must be "**joint proprietorship** and control over the enterprise") (emphasis added). The Term Sheet makes clear the parties had no such agreement. On the contrary, the parties' relationship was to be governed, if eventually agreed upon, by the proposed equity split and funding schedule set forth in the Term Sheet. The relationship was not as joint venturers but, instead, as members of TGS, an LLC. If the parties reached a definitive agreement, as noted

9

in the Term Sheet, they would have papered it. GE certainly would not have agreed to a $100 million oral joint venture agreement nor, given Moreno's apparent sophistication, would defendants have done so. Simply put, the Term Sheet is an agreement to agree on the terms of the parties' contemplated business relationship which, if consummated, would be effectuated though an appropriate corporate form. They, therefore, did not agree to enter into a joint venture.

That said, defendants' counterclaims and third-party claims address additional possible causes of action, which, if meritorious, entitle defendants to partially set-off the amounts due on the Note. Pursuant to CPLR 3212(e), when granting partial summary judgment on a plaintiff's breach of contact claim, this court has discretion to sever or stay the execution of judgment pending determination of the defendant's counterclaims. *See Bartfield v RMTS Assocs., LLC*, 283 AD2d 240, 241 (1st Dept 2001). Here, the Note and the Guaranty were not issued in isolation. They were part of a larger, proposed transaction that never came to fruition. To wit, the Term Sheet itself is annexed to the Note, and all of the documents are dated May 13, 2013. They are interconnected. It would be highly inequitable for GEOG to recover amounts on the Note in excess of the actual net liability between the parties.[6] To be sure, the merit of defendants' claims are unclear at this juncture. However, at this early stage, prior to discovery and prior to the merits of the counterclaims and third-party claims being considered on a motion to dismiss, entering judgment on the Note and the Guaranty might have the effect of granting GEOG an unwarranted windfall. GEOG, a GE subsidiary, is not starved for cash, nor is there

---

[6] It should be noted, however, that if defendants do not prevail on their counterclaims, since judgment is not entered and satisfied, damages will result in a larger eventual judgment because 9% pre-judgment interest accrues from the date the money was due (i.e., December 29, 2013) until the date judgment is entered. *See* CPLR 5001 & 5004.

10

concern that collecting a judgment from Moreno will be problematic.[7] For these reasons, the court denies GEOG's request for severance. Accordingly, it is

ORDERED that the motion by plaintiff GE Oil & Gas, Inc. for partial summary judgment on the first and second causes of action against defendants Turbine Generation Services, L.L.C. and Michael B. Moreno is granted on liability, and damages shall be determined at the time of trial; and it is further

ORDERED that, upon confirmation of the parties' availability, oral argument on Motion Seq. 003 will be held on March 18, 2016 at 10:30 in the forenoon and a preliminary conference will be held immediately thereafter; and it is further

ORDERED that leave is granted to defendants to amend their answer, counterclaims, and third-party claims to conform to the instant decision finding that the Term Sheet is an agreement to agree, on condition that such amended pleadings are filed within 21 days of the entry of this order on the NYSCEF system; and it is further

Dated: March 4, 2016

ENTER:

_____
J.S.C.

SHIRLEY WERNER KORNREICH
J.S.C.

---

[7] GEOG apparently believes Moreno has the means to satisfy a judgment because, in trying to paint him as unsympathetic, GEOG submitted articles and photographs of the house Moreno purchased from former Dallas Cowboys Quarterback Troy Aikman for $14 million. See Dkt. 85.

11