SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------- x

GE OIL & GAS, LLC,

                              Plaintiff,

    — against —

TURBINE GENERATION SERVICES, L.L.C.,
and MICHEL B. MORENO,

                           Defendants.

--------------------------------------------------------------- x

TURBINE GENERATION SERVICES, L.L.C.,

                  Third Party Plaintiff,

    — against —

GENERAL ELECTRIC COMPANY,

                 Third Party Defendant

--------------------------------------------------------------- x

Index No. 652296/2015
(Kornreich, J.)

**Motion Seq. #10**

Index No. 595013/2016

# MEMORANDUM OF LAW IN SUPPORT OF JUDGMENT CREDITOR'S
## MOTION TO COMPEL ASSET-RELATED DISCOVERY

REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS ...................................................................... 3

    A.    GEOG's Judgment and Attempts to Obtain Relevant Discovery
           from Judgment Debtors ................................................................ 3

    B.    The Parties' Correspondence Regarding Judgment Debtors'
           Discovery Deficiencies ................................................................ 5

    C.    Counsel's October 6, 2017 Telephonic Meet and Confer ........................ 8

LEGAL STANDARD ......................................................................... 9

ARGUMENT .................................................................................. 11

I.    DEFENDANTS SHOULD BE COMPELLED TO PRODUCE ALL
      NON-PRIVILEGED DOCUMENTS REQUESTED IN THE SUBPOENAS ............... 11

    A.    Judgment Debtors' Trust-Related Documents Are Relevant to
           Satisfaction of the Judgment and Should Be Produced ........................... 11

    B.    Judgment Debtors' Tax Returns Are Relevant to  Satisfaction
           of the Judgment and Should Be Produced ........................................ 15

    C.    Judgment Debtors' Complete Bank Account Statements and
           Other Account-Related Documents Are Relevant to Satisfaction
           of the Judgment and Should Be Produced ........................................ 19

    D.    Additional Documents Concerning Moreno's Entities Are Relevant
           to Satisfaction of the Judgment and Should Be Produced ....................... 19

II.    GEOG SHOULD BE AWARDED ITS ATTORNEYS' FEES AND COSTS FOR
      BEING FORCED TO FILE THIS MOTION DUE TO JUDGMENT DEBTORS'
      BASELESS OBJECTIONS TO PRODUCING RELEVANT DISCOVERY ................. 21

CONCLUSION ................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Aaron v. McIntyre*,
  15 A.D.3d 475, 790 N.Y.S.2d 187 (2d Dep't 2005) ........................................................15, 17

*Am. Dental Co-op, Inc. v. Attorney Gen. of N.Y.*,
  127 A.D.2d 274, 514 N.Y.S.2d 228 (1st Dep't 1987) .....................................................10, 21

*Anheuser-Bush, Inc. v. Abrams*,
  71 N.Y.2d 327, 520 N.E.2d 535, 525 N.Y.S.2d 816 (1988)..................................................9

*Burr v. Burr*,
  51 A.D.3d 433, 857 N.Y.S.2d 99 (1st Dep't 2008) ..............................................................22

*Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Commerce*,
  21 N.Y.3d 55, 990 N.E.2d 114, 967 N.Y.S.2d 876 (2013)..........................................10, 13, 21

*Gryphon Domestic VI, LLC v. GBR Info. Servs., Inc.*,
  29 A.D.3d 392, 815 N.Y.S.2d 65 (1st Dep't 2006) ................................................................9

*ICD Group, Inc. v. Israel Foreign Trade Co. (USA) Inc.*,
  224 A.D.2d 293, 638 N.Y.S.2d 430 (1st Dep't 1996) ............................................................9

*Kapon v. Koch*,
  23 N.Y.3d 32, 11 N.E.3d 709, 988 N.Y.S.2d 559 (2014)............................................9, 13, 17

*Kaygreen Realty Co., LLC v. IG Second Generation Partners, L.P.*,
  78 A.D.3d 1008, 913 N.Y.S.2d 663 (2d Dep't 2010) ............................................................23

*Kozel v. Kozel*,
  145 A.D.3d 530, 44 N.Y.S.3d 20 (1st Dep't 2016) ................................................................9

*Libaire v. Kaplan*,
  760 F. Supp. 2d 288 (E.D.N.Y. 2011) ...........................................................................15, 17

*Minuteman Research, Inc. v. Lefkowitz*,
  69 Misc. 2d 330, 329 N.Y.S.2d 969 (Sup. Ct., N.Y. Cty. 1972) ...........................................10

*Rainess v. Consol. Edison Co. of N.Y., Inc.*,
  33 A.D.3d 516, 823 N.Y.S.2d 136 (1st Dep't 2006) .............................................................15

*Rusyniak v. Candlewick Constr., Inc.*,
  63 A.D.2d 831, 406 N.Y.S.2d 186 (4th Dep't 1978)........................................................18, 19

*Sanon v. Sanon*,
  51 Misc. 3d 1214(A), 37 N.Y.S.3d 208
  (Sup. Ct., Monroe Cty. Jan. 27, 2016) ......................................................................9, 17, 21

*Studer v. Newpointe Estates Condominium,*
    152 A.D.3d 555, 58 N.Y.S.3d 509 (2d Dep't 2017) ............................................................24

## Statutes

CPLR § 2308 ..............................................................................................................................1

CPLR § 3120 ............................................................................................................................10

CPLR § 5223 ....................................................................................................................1, 4, 9

CPLR § 5224 ..................................................................................................................1, 4, 10

22 N.Y.C.R.R. § 130-1.1 ....................................................................................................22, 24

Plaintiff GE Oil & Gas, LLC ("GEOG") respectfully submits this Memorandum of Law, along with the accompany Affirmation of Casey D. Laffey, dated November 10, 2017 ("Laffey Aff."), in support of GEOG's motion, pursuant to CPLR §§ 2308, 5223 and 5224, to compel defendants Turbine Generation Services, L.L.C. ("TGS") and Michel B. Moreno ("Moreno") (together, "Judgment Debtors" or "Defendants") to produce specific financial documents relevant to enforcement of GEOG's judgment against the Judgment Debtors, and for an award of costs and fees incurred in connection with this application.

## PRELIMINARY STATEMENT

On August 3, 2016, this Court issued a judgment in favor of GEOG and against Judgment Debtors, jointly and severally, in the amount of $39,846,575.34 (the "Judgment"). To date, despite GEOG's post-judgment collection efforts, the entirety of the Judgment remains unsatisfied because of Judgment Debtors' persistent evasiveness and deceptiveness regarding the nature, amount, and location of their assets. Although GEOG has sought to obtain full discovery from Judgment Debtors in response to the Subpoenas through the meet and confer process, GEOG has recently learned from discovery obtained from a third party that Judgment Debtors – and Moreno in particular – have been ***intentionally misleading GEOG*** regarding their assets. As such, this Court's intervention is necessary to obtain full discovery from Judgment Debtors.

In response to GEOG's Information Subpoena, Moreno stated – under oath – that he had minimal assets and painted a picture of relative impoverishment. In particular, he disclosed that his assets included not much more than a Rolex watch, two vehicles, bank accounts with an aggregate balance of less than $20,000, and ownership interests in four companies that had not produced any personal income for the past two years. Moreno also stated that he had an unspecified interest in certain trusts that were described in cryptic terms, and that he was owed a total of approximately $30 million from the trusts over an unspecified period of time. However,

third party discovery served by GEOG has revealed that he painted a very different picture to a bank located in Kentucky (PBI Bank) when he sought to obtain a line of credit in or around October 2016.  From records produced by PBI Bank in response to a subpoena in Kentucky where the Judgment was domesticated, GEOG learned that Moreno represented that his ***net worth was approximately $60 million***, and that he was entitled to receive annuity payments on an annual basis from two trusts between July 2012 through October 2021 that were valued at approximately $26 million.

Moreno's manufactured financial picture is also at odds with the fact that he is still paying substantial legal expenses incurred from multiple, large law firms representing him in several lawsuits.  Related to Judgment Debtors' default on GEOG's loan, there has been litigation in this Court as well as in Texas, Louisiana, Delaware and Kentucky.  Despite GEOG's issuance of restraining notices to Judgment Debtors and their known banking institutions, Judgment Debtors' legal bills have somehow continued to be paid and high-priced lawyers continue to represent them in a multitude of lawsuits.  In other words, Judgment Debtors have significantly more assets available to satisfy GEOG's Judgment that they have not disclosed – and it is now apparent that they are purposefully misleading GEOG in an effort to delay and evade GEOG's collection efforts.

As detailed below, there are four categories of discovery that Judgment Debtors have refused to provide that are essential to GEOG finally moving forward to enforce the Judgment: (1) documents concerning trusts that Moreno created for the benefit of himself and his family; (2) tax returns for TGS and Moreno; (3) account statements and other account-related documents for TGS and Moreno's bank accounts; and (4) complete financial and corporate documents related to companies owned and/or affiliated with Moreno.  As GEOG repeatedly identified the

- 2 -

need for these documents to Judgment Debtors, they indicated that they were considering GEOG's requests, but following a teleconference and further written correspondence, it is clear that Judgment Debtors are not going to produce *any* of the requested documents. Judgment Debtors have refused to provide this critical information based upon an array of meritless objections, including that GEOG should obtain such discovery from third parties (some of which are outside the jurisdictional reach of this Court), or simply provided no explanation at all. Indeed, Judgment Debtors have taken the brazen position of refusing to produce documents that they *previously agreed* to produce, such as "formation documents" for one of the trusts, and refused to provide pages that are missing from documents already produced.

In fact, Judgment Debtors' current attempts to impede GEOG's reasonable efforts to obtain discovery for judgment-collection purposes represent a continuation of their well-documented bad faith tactics to frustrate GEOG's attempts to collect on its unpaid loan – which previously resulted in this Court issuing an anti-suit injunction and holding Judgment Debtors conditionally in contempt. Judgment Debtors' baseless refusal to produce critical judgment-related documents not only grossly ignores their legal obligations to properly comply with the Subpoenas, but also continues to flaunt this Court's rulings in issuing the Judgment.

For all of these reasons and those set forth below, the instant motion should be granted in its entirety.

### STATEMENT OF FACTS

**A. *GEOG's Judgment and Attempts to Obtain Relevant Discovery from Judgment Debtors***

On August 3, 2016, this Court issued the Judgment in favor of GEOG and against Judgment Debtors, jointly and severally, in the amount of $39,846,575.34. Thereafter, among other things, GEOG issued Restraining Notices to the Judgment Debtors and other entities

- 3 -

Case 1:18-cv-07555-VEC   Document 22-28   Filed 09/21/18   Page 8 of 28

reasonably believed to have assets, or information regarding assets, belonging to the Judgment

Debtors.

On or about March 3, 2017, GEOG issued Subpoenas Duces Tecum ("Subpoenas") and

Information Subpoenas ("Information Subpoenas") to both TGS and Moreno pursuant to CPLR

§§ 5223 and 5224.  *See* Laffey Aff., Exhs. A-B (Subpoenas) and C-D (Information Subpoenas).

Generally, the Subpoenas and Information Subpoenas sought information regarding the identity,

value and location of the Judgment Debtors' assets for judgment collection purposes.  As

relevant here, the Subpoenas requested production of, *inter alia*, documents related to the

following:  (i) trusts affiliated with Judgment Debtors, including those referred to as "MBM

2011" and "TCM 2011;" (ii) documents related to account statements in the names of Judgment

Debtors, and of various companies understood by GEOG to be controlled by, or affiliated with,

Judgment Debtors; (iii) documents sufficient to show the ownership structure of such companies;

(iv) documents sufficient to reflect the value of any real property and personal property

exceeding $1,000.00 in value; and (v) documents related to any transfers of such real property

and personal property.  *See* Laffey Aff., Exh. A, Nos. 7-82, 83-90, 95-96; Exh. B, Nos. 8-42, 43-

50, 55-56.

On or about March 27, 2017, Judgment Debtors served their Responses and Objections to

the Information Subpoenas ("Information Subpoena Responses").  *See* Laffey Aff., Exhs. E-F.

Based upon Moreno's Information Subpoena Responses, he represented that he had a minimal

amount of assets.  In particular, he represented  – under oath – that his assets were limited to the

following: (i) personal property valued in excess of $2,000.00 (consisting of merely a single

Rolex watch); (ii) bank accounts that held $17,342.23 in the aggregate; (iii) no vehicles other

than two 2006 and 2007 Land Rovers; and (iv) ownership interests in four entities named

Moreno Properties, LLC, Southern Equine Stables, LLC, Elle Investments, LLC, and DEI Marsh Island, LLC, which had furnished him with zero income in the previous two years. *See id.*, Exh. E, Nos. 49-50, 56, 59. Because Moreno is known to have significant assets, including his $11.5 million home that he purchased from former Dallas Cowboys Quarterback Troy Aikman, his Information Subpoena Responses were the first sign of many that he would be evasive and obstinate in providing legally-required information to enable GEOG to collect on the Judgment.

On or about April 3, 2017, Judgment Debtors served their Responses and Objections to the Subpoenas ("Subpoena Responses"). *See* Laffey Aff., Exhs. G-H. In addition to raising boilerplate objections to the Subpoenas, Judgment Debtors also asserted a number of meritless objections, including that the information sought by GEOG in the Subpoena was "not relevant to judgment collection" and could not be supplied because the Defendants "[do] not have an ownership interest" in some of the companies named by the Subpoenas. *See* Laffey Aff., Exh. G, Nos. 5, 8-9; Exh. H, Nos. 9-42, 56. Subject to these objections, the Subpoena Responses committed Judgment Debtors to produce various categories of responsive documents, some of which were never produced and some of which were produced only in part. Moreover, some of the documents Judgment Debtors objected to producing are highly relevant to GEOG's judgment collection efforts – including their tax returns – and should have been produced.

**B.** *The Parties' Correspondence Regarding Judgment Debtors' Discovery Deficiencies*

Because of the many deficiencies in Judgment Debtors' Subpoena Responses, on July 27, 2017, GEOG sent a six-page letter to Judgment Debtors detailing the many discovery deficiencies (the "Deficiency Letter"). *See* Laffey Aff., Exh. I. The Deficiency Letter outlined, generally, the following issues:

- *First*, the Judgment Debtors' production almost entirely ignored the specified time period of the Subpoenas, which was specified as "from May 13, 2013 through the date upon which the answers to these Requests are served." *See* Laffey Aff., Exhs.

- 5 -

A-B at Instruction No. 9. Where Judgment Debtors produced documents at all, with no explanation, the documents primarily date from 2016 and 2017, and there are virtually no documents dating from 2013 through 2015. This is particularly prejudicial given that Judgment Debtors defaulted on the underlying loan in late 2013, and any actions undertaken by them to avoid GEOG's eventual judgment, and any related fraudulent transfers, would have taken place around the time of the default.

- *Second*, Judgment Debtors failed to produce numerous categories of documents called for by the Subpoenas, and only provided sporadic and incomplete financial records. For instance, Judgment Debtors produced a single tax return for their affiliated company Casafin II, LLC, but did not produce their own tax returns, nor those of any other affiliated companies. No explanation was given for the Judgment Debtors' selective production of some, but not all, responsive tax returns.

- *Third*, despite the Subpoenas' clear statement that documents "relating to any account(s), whether active or closed . . ." in the names of certain affiliated companies include not only account statements, but also, without limitation, "invoices, canceled checks, deposit tickets, [and] account termination requests and/or applications[,]"Judgment Debtors only produced account statements. *See, e.g.*, Laffey Aff., Exh. G, No. 57. The Responses make no attempt to clarify why other documents could not be produced, beyond perfunctory objections that, alternately, each Judgment Debtor "does not have an ownership interest" in the given company, or that the request is "overly broad and unduly burdensome[.]"

- *Fourth*, Judgment Debtors' production omitted documents which they had specifically represented that they would produce. For example, Moreno committed to producing formation documents for the trust known as "MBM 2011 DOH Grantor Retained Annuity Trust," but such documents were never produced. *See id.*, Exh. G, No. 96. Again, no explanation was provided for this omission.

- *Fifth*, Judgment Debtors' production was entirely silent regarding several of the entities for whom the Subpoenas requested documents. Specifically, Judgment Debtors declined to produce any account-related documents in the name of Moody, Moreno & Rucks LLC ("MMR"), offering only the explanation that "Moreno is a minority owner and not manager of MMR." *See id.*, Exh. C, No. 53. Judgment Debtors also failed to produce any documents whatsoever regarding Southern Equine Land Holdings, LLC, without providing any justification or objection beyond repeating that the relevant document requests were "overly broad and unduly burdensome." *See id.*, Exh. G, Nos. 77-78.

- *Sixth*, Judgment Debtors refused to produce documents related to numerous affiliated companies, summarily and tersely stating that they "[do] not have an ownership interest" in each entity. *See, e.g., id.*, Exh. G, Nos. 33-34; Exh. H, No. 30.

Case 1:18-cv-07555-VEC   Document 22-28   Filed 09/21/18   Page 11 of 28

On August 30, 2017, nearly four weeks after GEOG sent the Deficiency Letter, Judgment Debtors provided a response. In the interim, Judgment Debtors' counsel of record (Mintz & Gold LLP) advised that Judgment Debtors' Texas counsel (Dykema Cox Smith) would be the primary counsel responding to GEOG's request for judgment-related discovery.

Judgment Debtors' August 30, 2017 letter ("August 30 Letter") essentially serves to double-down on the objections raised in their Subpoena Responses. It does not acknowledge any of the omissions and gaps in production noted in the Deficiency Letter, nor does it commit to producing any additional documents. Rather, it raises several points intended to suggest that Judgment Debtors have done all they can do, and all they are required to do, in response to the Subpoenas. In sum, the August 30 Letter contends that: (i) the Judgment Debtors "have already produced hundreds of documents and hundreds of pages" in response to the Subpoenas; (ii) "[a]ll responsive documents in the Defendants' possession custody [sic] or control have been produced"; and (iii) "Plaintiff ought to seek [further] documents from the [third-party] entities themselves . . . Moreno is not the appropriate party to produce many of these documents." *See* Laffey Aff., Exh. J, pp. 1-2.

On September 25, 2017, GEOG responded to the August 30 Letter, wherein GEOG again detailed the basis for the discovery it was seeking and why Judgment Debtors' objections were improper ("September 25 Letter"). *See* Laffey Aff., Exh. K. The September 25 Letter also set forth, again, the documents missing from Judgment Debtors' production that should have been provided. Thereafter, on October 2, 2017, Judgment Debtors' counsel sent an email clarifying that a page from their August 30 Letter was missing a page, providing a complete copy of the Letter, and proposing that counsel have a teleconference to discuss the outstanding discovery disputes. *See* Laffey Aff., Exh. L.

- 7 -

## C. *Counsel's October 6, 2017 Telephonic Meet and Confer*

On October 6, 2017, counsel for the parties participated in a teleconference regarding Judgment Debtors' outstanding discovery deficiencies. In an effort to reach a compromise and move discovery forward in a reasonable manner, GEOG proposed that it would not continue to seek the production of certain financial documents concerning certain of the Judgment Debtors' entities if Judgment Debtors would produce all of their tax returns during the relevant time period (which presumably would confirm, under oath, precisely what entities and trusts the Judgment Debtors had an interest in or received income from). Counsel for Judgment Debtors agreed to discuss this proposal with their client. However, during the October 6 teleconference, counsel for Judgment Debtors confirmed that they would not be producing any documents related to trusts created by or affiliated with Moreno, including the trust formation documents that Moreno has previously agreed to produce. *See* Laffey Aff., Exh. I, pp. 3-4. Counsel's discussions were memorialized in an exchange of letters dated October 6, 2017 and October 9, 2017. *See* Laffey Aff., Exhs. M-N.

On October 20, 2017, after two more weeks of delay, Judgment Debtors sent a letter advising that they will not be providing the requested tax returns either. *See* Laffey Aff., Exh. O. In support of their refusal to produce this critical financial information, Judgment Debtors argued – incorrectly – that they had already produced numerous documents and that GEOG has sought and obtained some documents from third parties. Judgment Debtors also contended that they have been "forthcoming in responding to GEOG's discovery requests," and that GEOG had not identified what new information might be gleaned from the tax returns. *Id.*

Based upon the foregoing, it is evident that Judgment Debtors will not produce critical information that is material and necessary to GEOG's efforts to collect on its Judgment despite good faith efforts to obtain such information from Judgment Debtors. Accordingly, GEOG

respectfully requests that this Court compel Judgment Debtors to provide this critical information.

## LEGAL STANDARD

GEOG, as judgment creditor, is entitled to disclosure of "all matter relevant to the satisfaction of the judgment . . . ." CPLR § 5223. This is a generous standard, "which permits the creditor a broad range of inquiry through either the judgment debtor or any third person with knowledge of the debtor's property." *ICD Group, Inc. v. Israel Foreign Trade Co. (USA) Inc.*, 224 A.D.2d 293, 294, 638 N.Y.S.2d 430, 430 (1st Dep't 1996). Judgment creditors are entitled to extensive discovery in aid of satisfying the judgment unless a subpoena recipient can "conclusively [establish] that it lacks information to assist the judgment creditors . . . ." *Gryphon Domestic VI, LLC v. GBR Info. Servs., Inc.*, 29 A.D.3d 392, 393, 815 N.Y.S.2d 65, 66 (1st Dep't 2006); *see also Kozel v. Kozel*, 145 A.D.3d 530, 531, 44 N.Y.S.3d 20, 21 (1st Dep't 2016) ("As Kaufman failed to establish conclusively that he lacks information to assist plaintiff, the judgment creditor, in obtaining satisfaction of the judgment . . . plaintiff is entitled to pursue discovery against him."). The recipient of a subpoena may not evade the disclosure requirements contained therein unless "the futility of the process to uncover anything legitimate is inevitable or obvious, or where the information sought is utterly irrelevant to any proper inquiry." *Anheuser-Bush, Inc. v. Abrams*, 71 N.Y.2d 327, 331-32, 520 N.E.2d 535, 537, 525 N.Y.S.2d 816, 818 (1988) (internal citations omitted).

A corollary of the broad standard for judgment-related discovery is that the judgment creditor need not show that any materials requested are unavailable from any other source. *See Kapon v. Koch*, 23 N.Y.3d 32, 38, 11 N.E.3d 709, 714, 988 N.Y.S.2d 559, 564 (2014) (noting that there is "no requirement that the subpoenaing party demonstrate that it cannot obtain the requested disclosure from any other source."); *Sanon v. Sanon*, 51 Misc. 3d 1214(A), 37

- 9 -

Case 1:18-cv-07555-VEC   Document 22-28   Filed 09/21/18   Page 14 of 28

N.Y.S.3d 208, at *2 (Sup. Ct., Monroe Cty. Jan. 27, 2016) ("The rule is simple: if [the subpoenaed party] has the documents, [it] must produce them, regardless of whether the [other party] has access to the documents or even if [the other party] has the same documents in [its] possession.").

Additionally, a subpoena duces tecum requires the production of all responsive documents within the recipient's "possession, custody or control." *See* CPLR §§ 3120, 5224. New York courts interpret this phrase as extending not merely to those documents which the recipient actually possesses, but those which she has the authority or ability to obtain from another person. *See Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Commerce*, 21 N.Y.3d 55, 62, 990 N.E.2d 114, 119, 967 N.Y.S.2d 876, 881 (2013) ("[V]arious courts have interpreted 'possession, custody or control' to allow for discovery from parties that had practical ability to request from, or influence, another party with the desired discovery documents. As such, courts have interpreted 'possession, custody or control' to mean constructive possession.").

Finally, neither the number of document requests made by a party via subpoena, nor the number of documents responsive to those requests which must be produced, is itself determinative of the subpoena's validity. "A subpoena is not rendered invalid merely because it requires production of a substantial number of documents. Relevancy, and not quantity, is the test of the validity of a subpoena." *Am. Dental Co-op, Inc. v. Attorney Gen. of N.Y.*, 127 A.D.2d 274, 282-83, 514 N.Y.S.2d 228, 234 (1st Dep't 1987) (quoting *Minuteman Research, Inc. v. Lefkowitz*, 69 Misc. 2d 330, 331, 329 N.Y.S.2d 969, 971 (Sup. Ct., N.Y. Cty. 1972)).

Based upon the foregoing principles, it is evident that Judgment Debtors should have produced the requested information months ago, and this Court should compel the production of such information.

## ARGUMENT

## POINT I

### DEFENDANTS SHOULD BE COMPELLED TO PRODUCE ALL NON-PRIVILEGED DOCUMENTS REQUESTED IN THE SUBPOENAS

**A. *Judgment Debtors' Trust-Related Documents Are Relevant to Satisfaction of the Judgment and Should Be Produced [Moreno Subpoena Request Nos. 95-96]***

In its Subpoenas to the Judgment Debtors, GEOG requested the production of documents concerning trusts known to serve as a source of revenue for Moreno and/or to be affiliated with Moreno. *See* Laffey Aff., Exh. A, Nos. 95-96. This information is critical because Moreno's Information Subpoena Responses indicate – although we believe disingenuously – that he has limited personal assets and that a substantial amount of his assets and revenue come from certain trusts. *See id.*, Exh. E, Nos. 51 (indicating "MBM Family Trust" owes Moreno $304,349), 67 (indicating that "MBM 2011 MGH Grat" owes Moreno $2,945,696 as an annuity and "MBM 2011 DOH Grat" owes him $25,595,674). As noted above, in or around October 2016, Moreno provided financial information to a bank located in Kentucky (PBI Bank) in connection with obtaining an increase to an existing line of credit, where it was noted that "the majority of Mr. Moreno's cash flow funnels through his trust entities…". *See* Laffey Aff., Exh. Q at 13. Thus, given the significance of the trusts to understanding and locating the "majority" of Moreno's assets, it is axiomatic that GEOG is entitled to all requested documents regarding the trusts.

However, in response to GEOG's reasonable requests for trust-related discovery, Moreno asserted a number of baseless objections, including contending that he was unable to determine

what trusts GEOG was referencing.  *See* Laffey Aff., Exh. G. No. 96.  This objection is even more preposterous given that Moreno ultimately agreed to produce the "formation documents for the 'MBM 2011 DOH Grantor Retained Annuity Trust.'"  *See id.*  To eliminate any doubt or uncertainty, GEOG specified in the Deficiency Letter that the requests for trust-related discovery related to the following trusts:  (i) MBM Family Trust, (ii) MBM 2011 DOH Grat ("MBM DOH Trust"), (iii) MBM 2011 MGH Grat ("MBM MGH Trust"), and (iv) TCM 2011 DOH Grat ("TCM DOH Trust") (together, the "Trusts").[1]  *See* Laffey Aff., Exh. I at 3-4.  GEOG also noted in its Deficiency Letter that Moreno had yet to produce the formation documents for the MBM DOH Trust despite his agreement to do so.  *Id.*

Rather than produce any of the requested trust-related discovery, Moreno has repeatedly made an array of misleading and baseless arguments to avoid production, including in the August 30 Letter and subsequent correspondence.  *See* Laffey Aff., Exh. J at 4.  Notably, Moreno has never provided a specific reason for failing to produce the formation documents for the MBM DOH Trust despite his agreement to do so, and there is no valid basis for withholding such documents.  With respect to his refusal to produce other trust-related documents, Moreno has primarily asserted four objections to producing such documents, each of which is without merit.

*First*, Moreno contends that he "is *neither* the Trustee *nor* the beneficiary of either the [MBM DOH Trust] or the [MBM MGH Trust]," and that he somehow has no obligation or the ability to produce documents related to such Trusts.  *See* Laffey Aff., Exh. J at 5 (emphasis added).  Moreno similarly contends that he "does not have in his possession any tax returns, bank records or documents related to the [Trusts], nor does he have any documents related to any

---

[1]     GEOG's understanding of the acronyms used in the Trusts' names is that "MBM" refers to Michel B. Moreno, "TCM" refers to Moreno's wife, Tiffany C. Moreno, and "Grat" refers to "Grantor" or "Grantor Retained Annuity Trust."

monies or interest held in trust by these trusts." *Id*. However, other than conclusory and misleading statements regarding his relationship to the Trusts, he has offered nothing to demonstrate that he lacks the "right, authority, or practical ability" to obtain such documents. *See Mariana Islands*, 21 N.Y.3d at 63, 990 N.E.2d at 119, 967 N.Y.S.2d at 881. In fact, Moreno has a significant interest in the Trusts since he was the settlor of the Trusts and, as his Information Subpoena Responses show, he receives substantial annuity payments from the Trusts (i.e., approximately $30 million collectively) – none of which has been denied by Moreno. Indeed, Moreno has represented the annuities from the Trusts to financial institutions as evidence of his sizable financial assets. S*ee Laffey Aff., Exh. Q at 15-16. Moreover, the Managing Trustee of some, if not all, of the Trusts is Moreno's sister, Dalis M. Waguespack, and Moreno certainly has some influence to obtain documents from his sibling. *See* Laffey Aff., Exh. P at 28-32 (during a deposition, Moreno confirmed that his sister, Dalis M. Waguespack, is the managing trustee of MBM MGH Trust). Thus, it is evident that Moreno has significant interest in the Trusts and exercises control over them, and his objections to producing the requested trust-related discovery fall flat and strain credulity. Moreover, as set forth in Point I.B below, Moreno has also conveniently refused to produce his tax returns, which would demonstrate whether he declared any income from any of the trusts during the relevant period.

*Second*, Moreno objects to producing trust-related discovery because GEOG has served subpoenas directly to the Trusts, and therefore he somehow no longer has an obligation to produce such documents. *See* Laffey Aff., Exh. J at 5. However, as a matter of law, it is clear that Moreno's obligation to produce responsive information is unaffected by any additional discovery that GEOG has sought. *See Kapon*, 23 N.Y.3d at 38, 11 N.E.3d at 714, 988 N.Y.S.2d at 564. In fact, this line of objection is clearly intended to thwart GEOG's attempts to obtain any

Case 1:18-cv-07555-VEC   Document 22-28   Filed 09/21/18   Page 18 of 28

trust-related discovery because – as Moreno undoubtedly knows – the Trusts have refused to produce any documents in response to GEOG's subpoenas on jurisdictional and other grounds. *See* Laffey Aff., Exh. R.  The Trusts have even asserted the brazen objection that some "responsive documents are better obtained from … Moreno." *Id.*, Exh. R at 1.  Thus, Moreno has employed a coordinated strategy to deprive GEOG of critical trust-related discovery and ignore his obligations under the Subpoena, and this Court should not permit Moreno to blatantly flaunt this Court's authority.

*Third*, Moreno contends that he does not have in his possession, custody or control documents related to the TCM DOH Trust because it was organized by his wife, and he is not the settlor, beneficiary, or trustee of that Trust.  *See* Laffey Aff., Exh. J at 5.  He also contends that any documents related to the TCM DOH Trust would be irrelevant for judgment satisfaction purposes because "there is no judgment against Mrs. Moreno." *Id.*  However, there is no dispute that Ms. Moreno lives with Moreno.  Moreover, even if Moreno were correct that only his wife has an interest in and control over the TCM DOH Trust – which seems doubtful – it does not automatically mean that the Trust is irrelevant to GEOG's judgment-related discovery efforts. For example, documents related to the TCM DOH Trust may disclose joint bank accounts and other joint assets of Moreno and his spouse, which would be highly relevant to GEOG's pursuit of information regarding Moreno's financial accounts and assets.  It is also possible that monies paid to Moreno's spouse by the TCM DOH Trust, including annuity payments, may have been transferred to Moreno in an effort to evade GEOG's restraining notices and other judgment collection efforts.  Thus, Moreno should produce documents related to the TCM DOH Trust.

*Finally*, despite GEOG repeatedly requesting documents related to the MBM Family Trust, including in the Deficiency Letter, Moreno has refused to specify why such documents

- 14 -

have not been produced. *See id.*, Exh. I at 4, Exh. J at 5. Given Moreno's silence and continual failure to produce such documents, GEOG can only assume that Moreno is withholding such documents for the same baseless reasons noted above. As such, the requested documents related to the MBM Family Trust should have been produced.

Accordingly, throughout GEOG's good faith efforts to resolve these disputes, Moreno has made clear that he will continue to openly ignore his obligation to produce the requested trust-related discovery, and that an order from this Court is now necessary to obtain this critical information.

**B.** ***Judgment Debtors' Tax Returns Are Relevant to Satisfaction of the Judgment and Should Be Produced [Moreno Subpoena Request Nos. 2-5; TGS Subpoena Request Nos. 5-7]***

In its Subpoenas to the Judgment Debtors, GEOG requested financial documents that would identify their assets, including their tax returns. *See* Laffey Aff., Exh. A, Nos. 2-5; Exh. B, Nos. 5-7. Although there are circumstances where tax returns may not be discoverable, in the context of judgment-related discovery and where a judgment creditor is seeking information regarding a judgment debtor's assets and finances, tax returns are clearly discoverable. *See, e.g.*, *Rainess v. Consol. Edison Co. of N.Y., Inc.*, 33 A.D.3d 516, 517, 823 N.Y.S.2d 136, 136 (1st Dep't 2006) ("The tax returns are relevant to issues raised in this litigation . . . . Requiring plaintiff to produce tax returns for three years before and after the relevant time period is reasonable."); *Aaron v. McIntyre*, 15 A.D.3d 475, 476, 790 N.Y.S.2d 187, 188 (2d Dep't 2005) (finding that petitioner was entitled to unredacted copies of the joint tax returns of the judgment debtor and his wife, particularly because other information showed "that the judgment debtor may be using his wife and her business to conceal income and assets."); *see also Libaire v. Kaplan*, 760 F. Supp. 2d 288, 294-95 (E.D.N.Y. 2011) (finding that a judgment debtor's tax returns are "clearly relevant" to enforcement, and that where a judgment debtor "has been less

- 15 -

than cooperative in producing any of the documents requested . . . there is a compelling need for the production of his corporate and personal income tax returns as well."). Here, for example, Judgment Debtors' tax returns are eminently relevant to GEOG's satisfaction of the Judgment. This is especially true here, where Judgment Debtors have been evasive and far from forthcoming regarding their complete financial picture and the location of their assets and there is no better source of this information than sworn tax returns.

Despite the clear relevance of Judgment Debtors' tax returns and GEOG's entitlement to such documents, Judgment Debtors have continually refused to produce the documents for dubious reasons. For example, during the parties' October 6, 2017 meet-and-confer session, GEOG offered to designate the tax returns as confidential under the Protective Order entered in this matter and to curtail its requests for other financial documents of Moreno's entities if Judgment Debtors produced their tax returns for all relevant years. *See* Laffey Aff., Exh. N. This is because the tax returns would be the best evidence – submitted under penalty of perjury – as to what interests and income the Judgment Debtors were receiving during the relevant period.

However, Judgment Debtors refused GEOG's offer. *See id.*, Exh. O. Judgment Debtors provided two explanations for their refusal, which were because (a) they believed that their production to date was more than sufficient in response to the Subpoenas; and (b) they believed that GEOG had failed to identify "what, if any, information it expects that Mr. Moreno and TGS' tax returns will contain" that is different from documents already produced. *See id.* Judgment Debtors also argued that financial documents produced by third parties should be sufficient, which, as detailed above, is a red herring since many of these third parties have refused to provide records to GEOG and the productions of third parties do not affect the Judgment

- 16 -

Debtors' independent obligation to comply with the Subpoenas. *See Kapon*, 23 N.Y.3d at 38, 11 N.E.3d at 714, 988 N.Y.S.2d at 564. Each of Judgment Debtors' explanations is without merit.

*First*, it is absurd that Judgment Debtors have refused to produce clearly-relevant tax returns on the basis that it is their subjective belief that Judgment Debtors have produced a sufficient amount of other financial information. It is well established that Judgment Debtors have an obligation to produce documents responsive to the Subpoenas to the extent that they have such documents. *See Sanon*, 51 Misc. 3d 1214(A), 37 N.Y.S.3d 208, at *2 (noting that the rule is simply that a subpoenaed party must produce documents responsive to a subpoena if it has them). The tax returns of the Judgment Debtors are the most relevant source of asset-related information, and the Judgment Debtors' subjective belief or opinion regarding whether enough documents have been produced is immaterial.

*Second*, Judgment Debtors' refusal to produce their tax returns on the basis that GEOG failed to specifically identify why such documents are necessary is entirely misplaced. As a threshold matter, GEOG had no duty to particularize the need for Judgment Debtors' tax returns given that GEOG is pursuing the documents as part of its attempts to collect on its Judgment. *Aaron*, 15 A.D.3d at 476; *Libaire*, 760 F. Supp. 2d at 294-95. Notwithstanding, during the October 6, 2017 meet-and-confer session, GEOG's counsel explained why the tax returns would be particularly valuable here as they would contain a summary of Moreno's interests in, and income, from the various entities and trusts to which he is affiliated. *See* Laffey Aff., Exh. N.

Most significantly, Judgment Debtors' tax returns could be critical to obtaining a complete picture of their financial picture, including the location and amount of assets. Throughout GEOG's discovery efforts, Judgment Debtors have consistently worked to evade, delay, and mislead GEOG regarding their finances and assets. For example, in his Information

Subpoena Responses, Moreno represented that he had minimal assets that included not much more than a Rolex watch, two vehicles and bank accounts with less than $20,000.  *See* Laffey Aff., Exh. E, Nos. 49-50, 56, 59.  This picture of impoverishment that Moreno has tried to manufacture is directly at odds with information available from other sources.  Not only does he receive substantial sums from the Trusts, as detailed above, but he represented to a bank located in Kentucky (PBI Bank), in or around October 2016, that his net worth was approximately $60 million and that he was entitled to receive approximately $26 million in annuity payments from two of the Trusts between July 2012 through October 2021.  *See* Laffey Aff., Exh. Q at 4, 16.

Finally, any objections raised by Judgment Debtors to the production of their tax returns, as well as the tax returns of their entities as further discussed *infra*, have been waived, as Judgment Debtors have already produced some tax returns of their entities.  *See Rusyniak v. Candlewick Constr., Inc.*, 63 A.D.2d 831, 831, 406 N.Y.S.2d 186, 187 (4th Dep't 1978) (holding that defendant "waived any objection to the production of tax returns by voluntarily producing these returns . . . .").  Simply put, Judgment Debtors cannot produce those tax returns that are convenient for their positions in this action, but withhold others that are not.

Thus, Judgment Debtors have been far from forthcoming regarding their finances, and the production of their tax returns will likely cut through this contrived fog and finally clarify the nature and location of their assets.  As a result of the Judgment Debtors' bad faith tactics, it is now necessary for this Court to order them to produce their tax returns for the time period specified in the Subpoenas.

- 18 -

Case 1:18-cv-07555-VEC   Document 22-28   Filed 09/21/18   Page 23 of 28

**C.** ***Judgment Debtors' Complete Bank Account Statements and Other Account-Related Documents Are Relevant to Satisfaction of the Judgment and Should Be Produced [Moreno Subpoena Request Nos. 4-5; TGS Subpoena Request Nos. 6-7]***

The Subpoenas also requested production of documents related to bank accounts in the Judgment Debtors' names, including account statements and other account-related documents. *See* Laffey Aff., Exh. A, Nos. 4-5; Exh. B, Nos. 6-7.  As with other components of the Judgment Debtors' document production, their disclosure of documents responsive to these requests was sporadic and scattered.  Not only did Judgment Debtors fail to produce any of the requested types of documents other than account statements, they omitted dozens of statements from within the requested time period, leaving significant gaps.  GEOG noted these inadequacies in the Deficiency Letter, and following the October 6th meet-and-confer session, GEOG provided an even more detailed summary of these omissions.  *See id.*, Exh. I at 2; Exh. N at 1-2.  Nevertheless, Judgment Debtors have yet to acknowledge any of these deficiencies, much less provide the requested documents consistent with their legal obligations.  As with their tax returns, Judgment Debtors have waived any right to object to producing bank account statements and other account-related documents because they have already voluntarily produced some of the requested documents.  *See Rusyniak*, 63 A.D.2d at 831, 406 N.Y.S.2d at 187.  As such, the Court should compel Judgment Debtors to produce all documents responsive to these requests.

**D.** ***Additional Documents Concerning Moreno's Entities Are Relevant to Satisfaction of the Judgment and Should Be Produced [Several Subpoena Request Nos., as Noted Below]***

In its Deficiency Letter, GEOG identified a number of other categories of documents that Judgment Debtors had yet to produce.  *See* Laffey Aff., Exh. I.  These documents include the following categories, all of which are important to GEOG's efforts to collect on its Judgment:

- Formation documents and corporate books and records for each of the companies affiliated with Judgment Debtors as specified in the Subpoenas, including but not

- 19 -

limited to tax returns, operating agreements, bylaws, and articles of incorporation. *See*, *e.g.*, *id.*, Exh. A, Nos. 29-30.

- Complete bank account statements for each of the companies affiliated with Judgment Debtors as specified in the Subpoenas, which is necessary because Judgment Debtors have produced statements that are missing pages and do not cover the entire requested time period. *See id.*

- Other financial documents (other than bank account statements) for each of the companies affiliated with Judgment Debtors as specified in the Subpoenas, including but not limited to invoices, canceled checks, deposit tickets, account termination requests and/or applications. *See id.*

- Formation documents, corporate books and records, and all other responsive documents related to three companies affiliated with Moreno for which no documents have been produced (Southern Equine Land Holdings, LLC, Moody, Moreno & Rucks, LLC, and the MBM Family Trust). *See id.*, Nos. 53-54, 77-78, 95-96; Exh. I, pp. 3-4.

- Complete statements and other account-related documents for Moreno's investment accounts with John Hancock and Merrill Lynch. *See id.*, Exh. A, No. 91.

- Documents reflecting whether Moreno and/or TGS has or have *at any point in the past* possessed an ownership interest in the companies listed on pp. 3-4 of the Deficiency Letter, which Judgment Debtors have repeatedly failed to address. *See id.*, Exh. I at 3-4, Exh. J at 5.

Through subsequent correspondence from the Judgment Debtors, including the August 30 Letter and the October 6, 2017 meet and confer, it has become clear that the Judgment Debtors will not produce these categories of documents. In fact, during the October 6th meet and confer, GEOG proposed forgoing some of these categories of documents if Judgment Debtors produced their tax returns for the specified time period, but Judgment Debtors rejected that proposal. *See* Laffey Aff., Exh. N. Based upon the parties' correspondence, Judgment Debtors have refused to produce these categories of documents for largely the same baseless reasons as with the trust-related discovery and tax returns, including that (a) they have already made a voluminous production of "hundreds of documents;" (b) all responsive documents in

their possession have duly been produced; and (c) GEOG ought to seek any further documents from third parties.  *See id.*, Exh. J.  However, each of these arguments is without merit.

First, the volume of documents produced by Judgment Debtors is immaterial to whether additional responsive and relevant documents must be produced.  *Am. Dental*, 127 A.D.2d at 282-83, 514 N.Y.S.2d at 234.  Second, it is evident that Judgment Debtors have not produced all documents within their possession, custody or control, and they have instead relied on an improperly narrow reading of that obligation.  As such, Judgment Debtors have not produced responsive documents within their constructive possession, meaning documents that Judgment Debtors have the ability to obtain from other third parties.  *See Mariana Islands*, 21 N.Y.3d at 62, 990 N.E.2d at 119, 967 N.Y.S.2d at 881.  Finally, again, whether third parties have responsive documents is irrelevant to whether Judgment Debtors have satisfied their obligation to produce all documents responsive to the Subpoenas.  *See Sanon*, 51 Misc. 3d 1214(A), 37 N.Y.S.3d 208, at *2.

Accordingly, this Court should order Judgment Debtors to produce each of the categories of documents referenced above.

**POINT II**

**GEOG SHOULD BE AWARDED ITS ATTORNEYS' FEES AND COSTS
FOR BEING FORCED TO FILE THIS MOTION DUE TO JUDGMENT DEBTORS'
BASELESS OBJECTIONS TO PRODUCING RELEVANT DISCOVERY**

In addition to the foregoing, Plaintiff should be entitled to recover its attorneys' fees and costs in filing this motion to obtain the requested documents.  Given Judgment Debtors' deficient and selective production of documents, their subsequent resistance to any supplemental or additional production, their meritless arguments to justify such resistance, and their consistent efforts to delay and hinder Plaintiff's discovery efforts, an award of fees and costs is well within the Court's discretion and eminently reasonable under the circumstances.  *See* 22 N.Y.C.R.R.

- 21 -

§ 130-1.1 ("[C]onduct is frivolous if: (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; [or] (2) it is undertaken primarily to delay or prolong the resolution of the litigation . . . .").

The many gaps in the Judgment Debtors' document production were made known to them over three months ago. During that period, Judgment Debtors have unsuccessfully attempted to justify their production as adequate by relying on arguments that are clearly meritless under New York law. As set forth more fully above, these have included the position that Judgment Debtors need only produce those documents within their own immediate possession; that GEOG's third party discovery efforts somehow reduce or relieve their own discovery obligations; and that GEOG must identify a particular need for documents, or the information GEOG expects documents to contain, in order to request them. Crucially, the baselessness of these arguments was pointed out to Judgment Debtors, at the latest, in GEOG's letter of September 25. *See* Laffey Aff., Exh. K; *see also* 22 N.Y.C.R.R. § 130-1.1(c) ("In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues . . . whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party.") Judgment Debtors have not wavered, however, and have continued to cling to baseless positions in the name of resisting any additional production of documents whatsoever. Their persistence in this regard justifies an award of fees and costs. *See Burr v. Burr*, 51 A.D.3d 433, 434, 857 N.Y.S.2d 99, 99 (1st Dep't 2008) (upholding trial court's grant of attorneys' fees where "[defendant's] arguments' lack of merit were apparent or should have been apparent, at a minimum, upon receipt of plaintiff's opposition.").

- 22 -

Not only have Judgment Debtors attempted to evade their discovery obligations through meritless arguments, it is evident that their efforts have been aimed at evading GEOG's satisfaction of the Judgment rather than adhering to their obligation to provide material and necessary information.  This is most readily seen in Judgment Debtors' repeated refusal to give an inch of ground to GEOG with respect to their discovery obligations, having failed to produce a single document in response to the deficiencies identified by GEOG in August 2017, including documents which they had in fact committed to producing.  Judgment Debtors' dilatory intent is also apparent from their attempts to redirect GEOG's discovery efforts onto the shoulders of third parties, suggesting that GEOG would be better served to ask other entities for documents that should be Judgment Debtors' possession, custody or control.  *See* Laffey Aff., Exh. J at 5. In short, at every turn, Judgment Debtors have insisted that there is nothing wrong with their production; that GEOG has no basis whatever to request any documents in addition to those already produced; and that GEOG ought to look elsewhere to remedy any deficiencies which do exist, including to entities which Moreno controls and which he knows full well have already refused to produce documents.

Such a pattern of evasion is plainly indicative of intent to prolong discovery disputes, not resolve them, and would warrant an award of fees and costs in GEOG's favor even if Judgment Debtors' legal arguments were colorable.  *See Kaygreen Realty Co., LLC v. IG Second Generation Partners, L.P.*, 78 A.D.3d 1008, 1009, 913 N.Y.S.2d 663, 665 (2d Dep't 2010) ("Making colorable claims may constitute frivolous conduct if the primary purpose is to delay or prolong the resolution of the litigation, or to harass or maliciously injure the other party.").  That Judgment Debtors' theories are clearly not supported by New York law further demonstrates their effort to delay the expeditious and efficient satisfaction of the Judgment, and supports an

- 23 -

award of fees and costs in GEOG's favor. *See Studer v. Newpointe Estates Condominium*, 152 A.D.3d 555, 557, 58 N.Y.S.3d 509, 512 (2d Dep't 2017) (holding that "[defendants'] repeated delays in complying with the plaintiff's discovery demands and the Supreme Court's discovery schedule, their failure to provide an adequate excuse for their delays, and their inadequate discovery responses, which did not evince a good-faith effort to address the requests meaningfully . . ." supported upholding the trial court's imposition of sanctions).

Accordingly, Judgment Debtors' conduct is frivolous as defined by 22 N.Y.C.R.R. § 130-1.1, and GEOG should be entitled to recover its attorneys' fees and costs for having to seek an Order from this Court to compel production of requested documents in the face of Defendants' stalling tactics and meritless objections.

## **CONCLUSION**

For all the foregoing reasons, GEOG respectfully requests that the instant motion be granted in its entirety, that Judgment Debtors be compelled to produce any and all outstanding responsive documents as detailed herein, and that Judgment Debtors be directed to pay GEOG's attorneys' fees and costs in seeking the requested information, along with such other and further relief the Court deems just, proper, and equitable.

Dated: New York, New York
November 10, 2017

**REED SMITH LLP**

By: *s/Casey D. Laffey*
Casey D. Laffey
Geoffrey G. Young
599 Lexington Avenue
New York, New York 10022
Tel: (212) 521-5400
Fax: (212) 521-5450

*Attorneys for GE Oil & Gas, LLC*

- 24 -